IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TED VENTURES, LLC, TREND MEDICAL MANAGEMENT, LLC, DEREK GOVE, TREY AUSTIN, AND ENRIQUE STOWHAS,<br>*Plaintiffs/Counter-Defendants,*<br>v.<br>LUCKY CHOPRA, ZOO CAPITAL HOLDINGS, LLC, AD DALLAS CLINICS, LLC, and TREND PHYSICIANS GROUP, INC.,<br>*Defendants/Counter-Plaintiffs.* | Civil Action No. 3:26-cv-02783-S[1] |

**Brief in Support of Plaintiff TED Ventures LLC's Amended Motion to Remand[2]**

---

[1] Removed from the 162nd Judicial District Court of Dallas County, Texas, Cause No. DC-25-05848 (Hon. Kim Bailey Phipps, Presiding).

[2] Pursuant to N.D. Tex. Local Civil Rule 7.2(f)(1), counsel states that portions of this brief were prepared using generative artificial intelligence. Every legal authority cited herein has been independently verified by counsel against the original source.

## Table of Contents


I. INTRODUCTION ........ 1

II. NATURE AND STAGE OF THE PROCEEDING ........ 3

III. ISSUES TO BE RULED ON BY THE COURT ........ 6

IV. SUMMARY OF THE ARGUMENT ........ 7

V. ARGUMENT AND AUTHORITIES ........ 8

A. The Court should remand the case under the equitable remand provisions of 28 U.S.C. § 1452(b). ........ 8

1. The equitable factors applied in this district weigh uniformly in favor of remand. ........ 9

2. The state court action had reached a final, trial-ready posture after sixteen months of litigation, with fact discovery, expert discovery, depositions, and mediation all complete. ........ 13

3. Requiring the parties to relitigate or re-adapt sixteen months of completed state-court discovery and preparation in a new forum would waste judicial resources and needlessly duplicate the parties' efforts. ........ 14

4. The claims are governed by Texas law and were ready for trial by a Texas court already thoroughly familiar with the parties, the record, and the governing law. ........ 14

5. The timing of the Debtor Defendants' bankruptcy filings — submitted the last business day before trial, after all discovery and mediation had concluded — supports remand. ........ 14

B. The Court should remand the case based on mandatory abstention under 28 U.S.C. § 1334(c)(2). ........ 16

1. There is no independent basis for federal jurisdiction. ........ 16

2. The claims are non-core. ........ 17

3. The action was commenced in state court. ........ 17

4. The action can be timely adjudicated in state court. ........ 17

C. The Court should remand the case based on permissive abstention under 28 U.S.C. § 1334(c)(1). .......... 18

D. In the alternative, if the entire case is not remanded, then the Court should sever Plaintiffs' claims against the Non-Debtor Defendants and remand them because those claims are not "related to" the Debtor Defendants' Chapter 11 Cases and were not properly removable in the first place. .......... 18

1. "Related to" jurisdiction requires that a proceeding's outcome could conceivably affect an existing bankruptcy estate, not merely that the proceeding shares facts with claims against a debtor. .......... 19

2. Plaintiffs' claims against the Non-Debtor Defendants arise from Chopra and Zoo's own independent conduct and seek recovery from their own assets. .... 20

3. Severing the claims against the Non-Debtor Defendants allows those claims to proceed to judgment in state court without affecting the administration of either bankruptcy estate. .......... 23

VI. CONCLUSION AND PRAYER .......... 23

CERTIFICATE OF CONFERENCE .......... 24

## Table of Authorities

### Cases

*Antelope Techs., Inc. v. Lowe (In re Antelope Techs, Inc.)*, 431 F. App'x. 272 (5th Cir. 2011)... 15

*Bass v. Denney*, 171 F.3d 1016 (5th Cir. 1999)........................................................................ 19

*Brown v. Beamers Private Club*, No. 3:16-cv-402-N-BN, 2016 U.S. Dist. LEXIS 79313, at *23-24 (N.D. Tex. 2016)........................................................................................................ 10

*Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 785 (Bankr. E.D. Tex. 2001).................................... 9

*Cal-Tex Compression Servs., L.L.C. v. LTM Consulting, L.L.C.*, No. 25-50854, 2026 U.S. App. LEXIS 16219, at *3 (5th Cir. 2026) ......................................................................................... 6

*Comerica Bank, N.A. v. Brock (In re Brock)*, Nos. 02-35198-HCA-7, 02-3342, 2003 Bankr. LEXIS 2299, at *16 n.23 (Bankr. N.D. Tex. 2003)............................................................... 18

*Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ........... 21

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y. 1991).......... 9

*Elscint, Inc. v. First Wis. Fin. Corp. (In Re Xonics)*, 813 F.2d 127, 131 (7th Cir. 1987)............ 19

*Feld v. Zale Corp.*, 62 F.3d 746 (5th Cir. 1995)........................................................................... 19

*GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)........................ 6

*Han v. Coutts (In re Coutts)*, Nos. 21-40528, 21-04092, 2022 Bankr. LEXIS 2284, at *22, 2022 WL 3367711 (Bankr. E.D. Tex. 2022) ........................................................................... 22

*In re Alexandra Trust*, 526 B.R. 668, 679-680 (Bankr. N.D. Tex. 2015).................................... 15

*In re Coho Energy Inc.*, 3:01-CV-0407-P, 2002 U.S. Dist. LEXIS 5862, 2002 WL 523948, *7 (N.D. Tex. April 5, 2002) ........................................................................................... 18

*In re Engra, Inc.*, 86 B.R. 890, 895 (Bankr. S.D. Tex. 1988)...................................................... 12

*In re Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990) ......................................................................... 6

*In re Montague Pipeline Techs. Corp.*, 209 B.R. 295 (Bankr. E.D.N.Y. 1997)........................... 14

*In re NRA of Am.*, 628 B.R. 262, 281 (Bankr. N.D. Tex. 2021) .................................................. 16

*In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999) ............................................................. 14

*In re Walsh*, 79 B.R. 28, 29 (Bankr. D. Nev. 1987)..................................................................... 12

*In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) ............ 11, 19

*In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) ............ 17

*Investors Group, LLC v. Pottorff*, 518 B.R. 380, 383-84 (N.D. Tex. 2014)............ 15

*Irwin v. Olson & Bearden (In re Irwin)*, 325 B.R. 22, 29 (Bankr. M.D. Fla. 2005)............ 13

*Regal Row Fina, Inc. v. Wash. Mut. Bank, FA*, No. 3:04-CV-1033-G, 2004 U.S. Dist. LEXIS 26704, at *27, 53 Collier Bankr. Cas. 2d (MB) 882 (N.D. Tex. 2004) ............ 7

*S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.*, 817 F.2d 1142, 1152-53 (5th Cir. 1987).. 21

*Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 359-60 (5th Cir. 1999) .. 22

*Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997) ............ 16

*Skaggs v. 4907 Corp.*, No. 02-24-00382-CV, 2025 Tex. App. LEXIS 3862, at *6 (Tex. App.—Fort Worth June 5, 2025, no pet.) ............ 21

*Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 929 & n.6 (5th Cir. 1999)............ 16

*St. Paul Self Storage Ltd. P'ship v. Port Auth. of St. Paul (In re St. Paul Self Storage Ltd. P'ship)*, 185 B.R. 580 (B.A.P. 9th Cir. 1995) ............ 15

*St. Vincent's Hosp. v. Norrell (In re Norrell)*, 198 B.R. 987 (Bankr. N.D. Ala. 1996) ............ 9

*Unico Holdings, Inc. v. Nutramax Prods., Inc.*, 264 B.R. 779 (Bankr. S.D. Fla. 2001)............ 13

*Wilson v. Davis*, 305 S.W.3d 57, 68 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ............ 21

*WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp.2d 596, 605 (S.D. Tex. 1999)............ 17

## Statutes

28 U.S.C. § 1334(b) ............ 5

28 U.S.C. § 1334(c) ............ 9

28 U.S.C. § 1334(c)(2)............ 6, 16

28 U.S.C. § 1452(a) ............ 5, 18

28 U.S.C. § 1452(b) ............ 6

TEX. BUS. & COM. CODE § 27.01 ............ 20

TEX. BUS. & COM. CODE § 27.01(c) and (d) ............ 22

TEX. BUS. COM. CODE § 3.414(b) ........ 20

TEX. BUS. ORGS. CODE § 21.223(a)(2) ........ 21

TEX. BUS. ORGS. CODE §§ 21.223(b) & 101.002 ........ 20

TEX. CIV. PRAC. & REM. CODE § 41.003(a) ........ 22

## Rules

FED. R. CIV. P. 21 ........ 23

TEX. R. CIV. P. 166 ........ 17

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff TED Ventures, LLC ("TED" or "Movant") files this Brief in Support of its Amended Motion for Remand.

## I. INTRODUCTION

TED Ventures and the other Plaintiffs sold substantially all of the assets of TREND Physicians Group, Inc. ("TPG"), and related clinic operations to Defendant AD Dallas Clinics, LLC ("AD Dallas") and its parent, Defendant Zoo Capital Holdings ("Zoo") for cash and other consideration totaling in excess of $12,000,000. The consideration was structured as: (a) $3,000,000 Base Cash Consideration; (b) $3,000,000 Subordinated Promissory Note; and (c) $6,000,000 in Rollover Securities. Defendants' own third-party consultant, VMG Health, valued the assets at more than $13,000,000. Plaintiffs performed all of their obligations; they delivered the businesses and assets as agreed.[3] Defendant Lucky Chopra ("Chopra") is the CEO of AD Dallas and Zoo. Gove Decl. ¶¶ 23-24, Appx. 218. Chopra signed the Asset Purchase and Contribution Agreement (the "Agreement") on their behalf.

After closing, Defendants bounced checks, made only erratic partial payments, defaulted on the promissory note, and never delivered the agreed rollover securities, leaving some $9,208,849.00 of the purchase price unpaid. Gove Decl. ¶¶ 17-22, Appx. 217-18; Gove Testimony, Transcript of Motion for Relief from Stay Before the Honorable Jeffrey P. Norman, United States Bankruptcy Court Judge at 14, *l.* 24 – 15, *l.* 3, & 16, *ll.* 19-22, Appx. 247-48 (noting $750,000 in dishonored checks) (hereinafter, "Lift-Stay Hearing Trans."). Plaintiffs sued

[3] *See* Declaration of Derek Gove in Support of Creditors' Motion for Relief From the Automatic Stay and Related Motions ¶¶ 9-12 & 16, Appx. 216-17 (hereinafter, "Gove Decl."); Gove Testimony, Lift-Stay Hearing Trans. at 55 *ll*. 20-22, Appx. 288 ("The documents were signed, the assets were transferred in accordance with the documents, and the full consideration was not paid for. That's why we're here.").

and asserted breach of contract and related claims.[4] Defendants, in turn, counterclaimed against Plaintiffs and sought injunctive relief of their own.[5] All of the parties' claims are state law claims. *Id*. The parties litigated in state court sixteen months — through the completion of fact discovery, expert discovery, depositions, and mediation — until the case was called for jury trial on August 17, 2026.[6]

AD Dallas and TPG (the "Debtor Defendants") filed Chapter 11 petitions on August 14, 2026 — the last business day before that trial was to begin.[7] Defendants then removed this case, including Plaintiffs' claims against Chopra and Zoo (the "Non-Debtor Defendants"), neither of whom is a debtor in any bankruptcy case and neither of whom is entitled to the protection of the automatic stay. *See* Notice of removal, ECF-1. Post-removal, the Bankruptcy Court lifted the stay to permit this case to proceed against the Debtor Defendants. *See* Order Lifting Stay, Appx. 211.

TED now moves the Court to remand the entire case to the 162nd Judicial District Court of Dallas County, Texas, where it was ready for trial before the Debtor Defendants' tactically timed bankruptcy filings intervened. Remand is appropriate on equitable grounds under 28 U.S.C. § 1452(b) and under the permissive and mandatory abstention provisions of 28 U.S.C. §§ 1334(c)(1)-(2). In the alternative, if the Court concludes that remand of the entire case is not appropriate, TED moves the Court to sever and remand the claims against the Non-Debtor

---

[4] *See* Plaintiffs' Original Petition, Appx. 3 et seq.

[5] *See* Defendants' First Amended Original Answer, Counterclaim, and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, Appx. 39 et seq.

[6] *See* Declaration of William W. Camp in Support of Plaintiffs' Motion for Remand ¶¶ 3-4, Appx. 231-32.

[7] *See* Suggestion of Bankruptcy for Defendants Trend Physicians Group, Inc., and AD Dallas Clinics, LLC, Appx. 189 et seq.

Defendants for the same reasons and for the additional reason that the Non-Debtor Defendant Claims are not "related to" either Chapter 11 case and were, therefore, never removable.

## II. NATURE AND STAGE OF THE PROCEEDING

1. On April 14, 2025, TED Ventures, LLC, TREND Medical Management, LLC, Derek Gove, Trey Austin, and Enrique Stowhas (collectively, "Plaintiffs") filed their Original Petition in the 162nd Judicial District Court of Dallas County, Texas, Cause No. DC-25-05848, against Lucky Chopra, Zoo Capital Holdings, LLC, AD Dallas Clinics, LLC, and TREND Physicians Group, Inc. (collectively, "Defendants"), asserting claims arising from Defendants' failure to pay the purchase price owed under the Agreement and related misrepresentations made in connection with the sale (the "TED Litigation"). *See* Plaintiffs' Original Petition, Appx. 3 et seq.; Camp Decl. ¶ 2, Appx. 231. Plaintiffs brought claims for: (1) breach of the Asset Purchase and Contribution Agreement ("Agreement"); (2) liability under UCC Article for dishonored checks; (3) common law fraud affirmative misrepresentations; (4) common law fraud nondisclosure; and (5) statutory fraud under Texas Business Commerce Code Section 27.01. *Id.*

2. Defendants answered, counterclaimed, and litigated the TED Litigation in Dallas County for the following sixteen months. *See* Defendants' First Amended Original Answer, Counterclaim, and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, Apx. 39 et seq.; Defendants' Second Amended Answer, etc., Appx. 114 et seq.; Defendants' Third Amended Answer, etc., Appx.151 et seq.

3. The state court entered an agreed scheduling order on June 23, 2025. *See* Agreed Scheduling Order, Appx. 137-38. The case was set for trial on April 21, 2026. *Id.*

4. On April 16, 2026, the parties filed their Agreed Motion for Continuance of Trial Setting and to Enter Amended Agreed Scheduling Order. *See* App. 141 et seq. The Motion recited that:

> Since the entry of th[e] Scheduling Order, the parties have engaged in extensive discovery, motion practice, and pretrial proceedings, including (without limitation) the negotiation and entry of an Agreed Protective Order on March 25, 2026, briefing and proceedings related to pending Motion to Transfer Venue and for Consolidation, ongoing written discovery and document production, and the scheduling of additional depositions of fact and expert witnesses. [*Id.* ¶ 2, Appx. 141]

5. The case was reset for trial on July 14, 2026, and then reset to August 17, 2026. *See* Appx. 188 & 187. By the time Plaintiffs filed their Second Amended Petition, Appx. 174 et seq., the parties had completed fact discovery, expert discovery, all depositions, and a full mediation of the dispute. Camp Decl. ¶ 3, Appx. 231.

6. Leading up to the third trial setting, the parties had pre-marked exhibits, served deposition designations, tendered a pretrial order under TEX. R. CIV. P. 166, issued trial subpoenas, and printed trial books. Both sides announced ready on August 13, 2026. Camp Decl. ¶ 4, Appx. 232.

7. On August 14, 2026, the last business day before the scheduled trial date—indeed, in the last hour of the business day—AD Dallas Clinics, LLC and TREND Physicians Group, Inc., each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, styled *In re DET Dallas Clinics, LLC*, Case No. 26-35975, and *In re TREND Physicians*

*Group, Inc.*, Case No. 26-35976 (together, the "Chapter 11 Cases").[8] That same week, AD Dallas Clinics, LLC changed its name to DET Dallas Clinics, LLC. Camp Decl. ¶ 5, Appx. 232. [DE18T Dallas Clinics and TREND Physicians Group are referred to herein collectively as the "Debtor Defendants."]

8. On August 19, 2026, the Debtor Defendants, joined by the Non-Debtor Defendants, filed a Notice of Removal purporting to remove the entire TED Litigation — including Plaintiffs' claims against the Non-Debtor Defendants Chopra and Zoo, neither of whom is a debtor in any bankruptcy case — to this Court, invoking "related to" jurisdiction under 28 U.S.C. § 1334(b)[9] and the removal provisions of 28 U.S.C. § 1452(a).[10] *See* ECF-1. Defendants filed the Notice of Removal the afternoon before a hearing scheduled in the state court on Plaintiffs' then-pending motion to sever the claims against the Non-Debtor Defendants. Camp Decl. ¶ 6, Appx. 232-33. The Notice of Removal does not allege that any removed claim is a core proceeding. *See* ECF-1. No trial date has been set in this Court.

9. Post-removal, the Bankruptcy Court lifted the stay to permit this case to proceed against the Debtor Defendants. *See* Order Lifting Stay, Appx. 211. It also transferred the bankruptcy

[8] *See* Suggestion of Bankruptcy for Defendants Trend Physicians Group, Inc., and AD Dallas Clinics, LLC, Appx. 189 et seq.

[9] Section 1334(b) provides, in relevant part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings **arising under** title 11, or **arising in** or **related to** cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). Out of this trio of jurisdictional grants, Defendants have asserted only "related to" jurisdiction.

[10] "A party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).

proceedings from the Southern District to the Northern District. *See* Order Granting Motion To Transfer Case, App. 212-13.

10. Plaintiffs' claims against the Non-Debtor Defendants — who are not before the bankruptcy court in any capacity and against whom no automatic stay applies[11] — remain ready for the trial the parties had already prepared for in Dallas County. Camp Decl. ¶ 8, Appx. 233.

## III. ISSUES TO BE RULED ON BY THE COURT

A. Whether the Court should remand the case under the equitable remand provisions of 28 U.S.C. § 1452(b).

B. Whether the Court should remand the case based on mandatory abstention under 28 U.S.C. § 1334(c)(2).[12]

C. Whether the Court should remand the case based on permissive abstention under 28 U.S.C. § 1334(c)(1).[13]

[11] The purposes of the bankruptcy stay under 11 U.S.C. § 362 "are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985). "By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors." *Id.*

[12] "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). As noted above, Defendants assert only "related to" jurisdiction; they have not asserted "arising under" or "arising in" jurisdiction.

[13] "[N[othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

D. In the alternative, whether the Court should sever Plaintiffs' claims against the Non-Debtor Defendants and remand them because those claims are not "related to" the Debtor Defendants' Chapter 11 Cases and were not properly removable in the first place.

## IV. SUMMARY OF THE ARGUMENT

"Together, § 1452(b) and § 1334(c) evince a congressional policy that the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334 and the litigation can be timely completed in state court." *Regal Row Fina, Inc. v. Wash. Mut. Bank, FA*, No. 3:04-CV-1033-G, 2004 U.S. Dist. LEXIS 26704, at *27, 53 Collier Bankr. Cas. 2d (MB) 882 (N.D. Tex. 2004). "Because the statutes are similar in purpose, the circumstances which weigh in favor of discretionary abstention or dictate mandatory abstention under § 1334(c), weigh in favor of or constrain remand under § 1452(b)." *Id.* at *27-28.

The Court should remand the case under the equitable remand provisions of 28 U.S.C. § 1452(b). Section 1452(b) permits remand of "such [removed] claim or cause of action" — claim by claim — "on any equitable ground." The equitable factors which the courts of this district apply under § 1452(b) all point to remand. This is a Texas case. Every party is a Texas citizen. Every claim arises under Texas law. Every operative fact predates the bankruptcy petitions by more than two years. The only thing federal about this dispute is that two of four Defendants filed chapter 11 on the last business day before trial, and their co-defendants used those filings to remove a case that had been called for trial two days earlier.

The Court should remand the case based on mandatory abstention under 28 U.S.C. § 1334(c)(2). All four mandatory abstention factors are met: (1) the claims have no independent basis for federal jurisdiction, other than § 1334(b); (2) the claims are a non-core proceeding;

(3) an action has been commenced in state court; and (4) the action can be adjudicated timely in state court.

The Court should remand the case based on permissive abstention under 28 U.S.C. § 1334(c)(1). The factors considered for permissive abstention substantially overlap with the equitable remand factors. Because equitable remand is appropriate, remand based on permissive abstention is equally supported.

In the alternative, if the entire case is not remanded, then the Court should sever Plaintiffs' claims against the Non-Debtor Defendants and remand them because those claims are not “related to” the Debtor Defendants' Chapter 11 Cases and were not properly removable in the first place. “Related to” jurisdiction requires that a proceeding's outcome could conceivably affect an existing bankruptcy estate, not merely that the proceeding shares facts with claims against a debtor. Plaintiffs' claims against the Non-Debtor Defendants arise from Chopra and Zoo’s own independent conduct and seek recovery from their own assets. Severing the claims against the Non-Debtor Defendants allows those claims to proceed to judgment in state court without affecting the administration of either bankruptcy estate.

## V. ARGUMENT AND AUTHORITIES

### A. The Court should remand the case under the equitable remand provisions of 28 U.S.C. § 1452(b).

Equitable remand under 28 U.S.C. § 1452(b) is proper because only state-law claims are at issue, allowing prosecution of this case to a final judgment will have no effect on the efficient administration of the bankruptcy estate, litigating this state-law case in this Court would duplicate and waste judicial resources the state court already expended, and comity favors remand.

Section 1452 operates claim by claim: a party may remove "any claim or cause of action," § 1452(a), and a court to which a claim is removed "may remand such claim or cause of action on any equitable ground," 28 U.S.C. § 1452(b). This broad grant of discretion is informed by considerations including the efficient administration of the estate, the predominance of state-law issues, comity, the extent to which the proceeding is related to the main bankruptcy case, potential prejudice to the parties involuntarily removed from state court, and judicial economy. *See Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y. 1991); *accord St. Vincent's Hosp. v. Norrell (In re Norrell)*, 198 B.R. 987 (Bankr. N.D. Ala. 1996) (equitable remand under § 1452(b) draws on the same considerations that inform discretionary abstention under 28 U.S.C. § 1334(c)). "A federal district court or bankruptcy court may find that remand is appropriate in a case removed on bankruptcy grounds whether it is 'core' or 'non-core' if there is any equitable ground for doing so." *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 785 (Bankr. E.D. Tex. 2001).

***1. The equitable factors applied in this district weigh uniformly in favor of remand.***

Courts weigh fourteen non-exclusive factors under 28 U.S.C.§ 1452(b) in determining whether equitable remand is appropriate: (1) effect on efficient estate administration; (2) predominance of state-law issues; (3) difficulty or unsettled nature of the applicable law; (4) presence of related state-court or other non-bankruptcy proceedings; (5) jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) degree of relatedness to the main bankruptcy case; (7) substance over form of an asserted core proceeding; (8) feasibility of severing state-law claims for state-court judgment with enforcement left to the bankruptcy court; (9) burden on the bankruptcy court's docket; (10) likelihood of forum shopping; (11) existence of a jury-trial right; (12) presence of non-debtor parties; (13) comity; and (14) possibility of prejudice to other

parties. *Brown v. Beamers Private Club*, No. 3:16-cv-402-N-BN, 2016 U.S. Dist. LEXIS 79313, at *23-24 (N.D. Tex. 2016); *Regal Row Fina*, 2004 U.S. Dist. LEXIS 26704, at *29.[14] These considerations support remand here:

- **Effect on estate administration** — The Bankruptcy Court has already addressed this issue as to the Debtor Defendants by lifting the stay to permit Plaintiffs' claims to be liquidated against the Debtor Defendants, with enforcement of a judgment requiring a further order of the Bankruptcy Court. *See* Order Lifting Stay, Appx. 211; Lift-Stay Hearing Trans.at 91, *ll.* 18-24, Appx. 324 ("There is a need to litigate the claim. At this juncture, I feel -- find no reason that the state court is not equally or better equipped to litigate the claims. As the pleadings indicate, it was pending for 16 months in state court, discovery deadlines have already elapsed. The case was set for trial. I don't see any real reason that if I don't lift the stay, the case can't be tried very quickly.") & 92, *ll.* 6-10, Appx. 325 ("I'm willing to lift the stay for the limited purposes of either remand, trial in the federal court or state court, but only to liquidate claims; past that, the stay is not lifted. But the claims clearly need to be liquidated. And I don't see any real reason why a federal court needs to do that."). This is not a factor as to the Non-Debtor Defendants, Chopra and Zoo, because they are not debtors in bankruptcy.
- **Predominance of state law** — Every claim in the case is a Texas state law claim. Thus, this factor weighs in favor of remand.
- **Difficulty or unsettled nature of the applicable** law — There are no difficult or unsettled legal questions. Thus, this factor weighs in favor of remand.
- **Other related proceedings** — The other related proceedings, discussed at the status conference, are both pending in state court: *Enterprise Bank & Trust v. Gove, et al.*, Cause No. 116801, in the 40th Judicial District Court, Ellis County, Texas, and *Gove, et al. v. Chopra, et al.*, Cause No. 120138, in the 40th Judicial

[14] As discussed in Part C below, the same considerations warrant permissive abstention under § 1334(c)(1), "in the interest of justice, or in the interest of comity with State courts or respect for State law."

District Court, Ellis County, Texas (the latter case is comprised of a set of claims which the district court severed from the former case). Enterprise was a pre-transaction lender to various TED entities. "There was a UCC-1 on TREND Physicians Group held by Enterprise Bank and Trust, and they were to lift the UCC-1 on completion of the asset purchase contribution agreement with successful base cash consideration payment, as well as the rollover securities, and -- as well as the security of the accounts receivables of $15 million." Gove Testimony, Lift-Stay Hearing Tr. at 24, *l.* 22 – 25 *l.* 2, Appx. 257-58. "One of the conditions of the Asset Purchase and Contribution Agreement was that it would be removed, and the agreement with the bank and with Zoo was that it would be removed on completion of the Asset Purchase and Contribution Agreement, just like when you're, you know, buying a car or anything else. If there's a lien on it, you have to complete the contract and satisfy the contract to remove the UCC." Gove Testimony, Lift-Stay Hearing Tr. at 33, *ll.* 4-10, Appx. 266. "[T]he lien was not removed because the purchase price was not paid." Gove Testimony, Lift-Stay Hearing Tr. at 53, *ll.* 1-2, Appx. 286. The failure to perform under the Agreement eventually resulted in Enterprise's suit under the loan documents against the borrowing entities and the individual guarantors.

- **Jurisdictional basis other than § 1334** — There is no jurisdictional basis other than under § 1334. No federal question is raised, and the parties are not diverse.
- **Degree of Relatedness** — The Bankruptcy Court has addressed this by retaining the stay insofar as it relates to enforcement of a judgment against the Debtor Defendants. The claims to be tried against Chopra and Zoo involve no debtor and are thus not related, which weighs in favor of remand.
- **Core proceeding** — The claims are not core proceedings.[15] Thus, this factor weighs in favor of remand.

[15] In general, a "core proceeding" in bankruptcy is one that "invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only the context of a bankruptcy case." *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

- **Feasibility of severing state-law claims for state-court judgment with enforcement left to the bankruptcy court** — This is the approach the Bankruptcy Court has taken in the Lift-Stay Order, Appx. 211.
- **Docket Burden on the Bankruptcy Court** — The burden this case would impose on the state court docket is less than the burden in this court because the state court had already completed pretrial proceedings and had called the case to trial.
- **Forum shopping** — The removal came two days after the third trial setting and the petitions' last-hour, last-business-day filing, accompanied by a same-day corporate name change and timed the afternoon before a hearing on Plaintiffs' motion to sever.[16] As Bankruptcy Judge Norman observed during the lift-stay hearing: "[A]t this juncture, I'm going to make just a general comment for the record that bankruptcies filed on the eve of trial, especially state court trials, are in this Court's eyes somewhat suspect. They always have the appearance of simply avoiding trial and avoiding what I would consider to be a final reckoning." *See* Lift-Stay Hearing Trans. at 91, *ll.* 12-17, Appx. 324.
- **Jury Trial** — As discussed at the status conference, the case is set for a bench trial based on a jury waiver provision in the Agreement.
- **Presence of non-debtor parties** — The presence of the Non-Debtor Defendants, Chopra and Zoo, weighs in favor of remand.
- **Comity** — Comity weighs in favor of remand. A Dallas County court has invested sixteen months in a Dallas County dispute governed entirely by Texas law. "[C]omity considerations weigh heavily in favor of remand due to the extent of the state court's familiarity with and prior rulings in the case." *Brown*, 2016 U.S. Dist. LEXIS 79313, at *26, *citing In re Engra, Inc.*, 86 B.R. 890, 895 (Bankr. S.D. Tex. 1988); *In re Walsh*, 79 B.R. 28, 29 (Bankr. D. Nev. 1987). A state-law dispute like this one "falls squarely within the special expertise of the

[16] *Brown v. Beamers* is directly on point. There, debtor defendants filed chapter 11 and non-debtor defendants removed a state case on the Friday before a Monday trial setting. The court remanded, observing that the "eve-of-trial removal suggests forum shopping to avoid the state court's rulings."

state courts." *Irwin v. Olson & Bearden (In re Irwin)*, 325 B.R. 22, 29 (Bankr. M.D. Fla. 2005).

- **Prejudice** — Converting a reached third trial setting into an indefinite delay is prejudicial to Plaintiffs' prompt resolution of their claims. "Prejudice to the involuntarily removed parties is obvious given not only the delay that would result from not remanding this case but also the potential circumvention of prior rulings by the state court." *Brown*, 2016 U.S. Dist. LEXIS 79313, at *26. As Mr. Gove testified at the lift-stay hearing: "It was trial ready. We had done 16 months' worth of 14 discovery, litigation work, et cetera, experts and all the things that got it ready for trial. And yes, it would hurt us not to have that liquidated in the Dallas County Court." Lift-Stay Hearing Trans. at 39, *ll.* 14-17, Appx. 272.

These factors are discussed in greater detail below.

***2. The state court action had reached a final, trial-ready posture after sixteen months of litigation, with fact discovery, expert discovery, depositions, and mediation all complete.***

The state court had presided over this litigation since April 2025 through completed discovery, depositions, and mediation, with trial set for August 17, 2026. Courts weighing equitable remand give substantial weight to a case's advanced procedural posture and the prejudice of forcing parties to begin anew, or re-adapt years of state-court preparation, in a different forum. *See, e.g., Irwin v. Olson & Bearden (In re Irwin)*, 325 B.R. 22, 29 (Bankr. M.D. Fla. 2005) ("it is clear that the … action had progressed significantly in the fourteen months that it remained pending in state court, and the state court had no doubt acquired a substantial degree of familiarity with the case during that time"); *Unico Holdings, Inc. v. Nutramax Prods., Inc.*, 264 B.R. 779, 786 (Bankr. S.D. Fla. 2001) (remand favored where the state court was ready for trial and familiar with the case; "To try the action in another forum would create duplicative and

uneconomical use of scarce judicial resources and would severely prejudice the involuntarily removed party.").

### ***3. Requiring the parties to relitigate or re-adapt sixteen months of completed state-court discovery and preparation in a new forum would waste judicial resources and needlessly duplicate the parties' efforts.***

The efficient administration of the estate and the avoidance of duplicative proceedings are core considerations in the equitable remand analysis. *Drexel Burnham*, 130 B.R. at 407. Here, that consideration cuts decisively toward remand: the claims against the Non-Debtor Defendants do not belong in the bankruptcy court at all and forcing them to be relitigated or re-prepared for trial in a new forum — after the state court and the parties have already invested sixteen months completing every phase of discovery and mediation — would waste, not conserve, judicial and party resources.

### ***4. The claims are governed by Texas law and were ready for trial by a Texas court already thoroughly familiar with the parties, the record, and the governing law.***

Plaintiffs' claims sound in Texas contract and tort law and raise no question of bankruptcy law. The predominance of state-law issues, and the value of letting the state court already versed in the record decide them, are traditional grounds for equitable remand. *See In re Montague Pipeline Techs. Corp.*, 209 B.R. 295, 299-300 (Bankr. E.D.N.Y. 1997).

### ***5. The timing of the Debtor Defendants' bankruptcy filings — submitted the last business day before trial, after all discovery and mediation had concluded — supports remand.***

Courts scrutinize the timing of a Chapter 11 filing made on the eve of an adverse trial or ruling as evidence that the filing served a litigation purpose rather than a genuine rehabilitative one. *See In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999) (a Chapter 11 petition filed

solely to obtain a tactical litigation advantage, without a valid reorganizational purpose, is subject to dismissal for lack of good faith); *St. Paul Self Storage Ltd. P'ship v. Port Auth. of St. Paul (In re St. Paul Self Storage Ltd. P'ship)*, 185 B.R. 580, 582-583 (B.A.P. 9th Cir. 1995) ("To determine whether a debtor has filed a petition in bad faith, courts weigh a variety of circumstantial factors such as whether: … the case is essentially a two party dispute capable of prompt adjudication in state court."). While that good-faith inquiry bears most directly on the Debtor Defendants' own Chapter 11 Cases, the same timing confirms that removing the entire Dallas County action — including the claims against the Non-Debtor Defendants (who own and fully control the Debtor Defendants [ECF-2]) — served the same tactical purpose: delaying a trial that was ready to proceed, not protecting any legitimate reorganizational interest.

Filing on the last business day before a long-scheduled trial, after all discovery and mediation were complete, is powerful circumstantial evidence of a delay-driven, tactical filing. Courts have long recognized that such timing, standing alone, raises a strong inference that a bankruptcy filing was made to avoid an imminent, unfavorable trial rather than to pursue a good-faith reorganization.

> Courts have consistently held that a bankruptcy case filed for the purpose of obtaining an unfair litigation advantage is not filed in good faith and should be dismissed. *See Antelope Techs., Inc. v. Lowe (In re Antelope Techs, Inc.)*, 431 F. App'x. 272 (5th Cir. 2011) (affirming dismissal for cause based on finding that "the purpose of the petition was not primarily to reorganize or respond to financial crisis but instead was to gain unfair advantage in the shareholder derivative action"); *Investors Group, LLC v. Pottorff*, 518 B.R. 380, 383-84 (N.D. Tex. 2014) (affirming dismissal of a bankruptcy case for being filed in bad faith based on a finding that the primary purpose for filing the bankruptcy petition was to gain an advantage in pending litigation); *In re Alexandra Trust*, 526 B.R. 668, 679-680 (Bankr. N.D. Tex. 2015) (citing cases).

*In re NRA of Am.*, 628 B.R. 262, 281 (Bankr. N.D. Tex. 2021). *Accord In re SGL Carbon Corp.*, 200 F.3d at 164-165 ("filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within "the legitimate scope of the bankruptcy laws").

For the above reasons, the Court should remand the case under the equitable remand provisions of 28 U.S.C. § 1452(b)

**B. The Court should remand the case based on mandatory abstention under 28 U.S.C. § 1334(c)(2).**

Section 1334(c)(2) provides that "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). Abstention applies equally to removed actions. *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 929 & n.6 (5th Cir. 1999).

The Fifth Circuit distills four elements: "(1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court." *Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997).

***1. There is no independent basis for federal jurisdiction.***

All Plaintiffs and all Defendants are Texas citizens. No claim arises under federal law. Defendants' notice of removal invokes § 1334(b) alone. Absent § 1334, no federal court would have jurisdiction over this dispute.

***2. The claims are non-core.***

"If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding." *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). Every claim here existed, and was being litigated, for sixteen months before any petition was filed. Defendants nowhere allege that any removed claim is core.

***3. The action was commenced in state court.***

There is no dispute that this case was filed on April 14, 2025, in the 162nd Judicial District Court of Dallas County, Texas.

***4. The action can be timely adjudicated in state court.***

The test is capability, not comparative speed. *WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp*., 75 F. Supp.2d 596, 605 (S.D. Tex. 1999) (the movant "need not show that the action can be more timely adjudicated in state court, but rather that the matter can be timely adjudicated in state court"). Here, the record establishes capability. The state court entered the only scheduling order in the case; presided over discovery; received a joint pretrial order under TEX. R. CIV. P. 166; and called the case for trial three times. Plaintiffs announced ready, as did Defendants.[17] Witnesses were subpoenaed. Exhibits were pre-marked and tendered. Trial books were printed. No stronger showing of timely prosecution is possible.

Because all four factors for mandatory abstention are met, the Court should remand the case based on mandatory abstention under 28 U.S.C. § 1334(c)(2)

[17] Defendants withdrew their trial announcement of "ready" immediately after the bankruptcy petition were filed.

**C. The Court should remand the case based on permissive abstention under 28 U.S.C. § 1334(c)(1).**

Section 1334(c)(1) permits abstention "in the interest of justice, or in the interest of comity with State courts or respect for State law." The considerations governing permissive abstention are substantially those that govern equitable remand, and they are set out in Section A above. *See Comerica Bank, N.A. v. Brock (In re Brock)*, Nos. 02-35198-HCA-7, 02-3342, 2003 Bankr. LEXIS 2299, at *16 n.23 (Bankr. N.D. Tex. 2003) (discussing 12-factors for permissive abstention which overlap with equitable remand factors)[18]; *In re Coho Energy Inc*., 3:01-CV-0407-P, 2002 U.S. Dist. LEXIS 5862, 2002 WL 523948, *7 (N.D. Tex. April 5, 2002) (same).

If the Court concludes that any element of mandatory abstention is unmet, the interests of justice and comity with a Texas court that has managed this Texas dispute for sixteen months independently warrant permissive abstention.

**D. In the alternative, if the entire case is not remanded, then the Court should sever Plaintiffs' claims against the Non-Debtor Defendants and remand them because those claims are not "related to" the Debtor Defendants' Chapter 11 Cases and were not properly removable in the first place.**

Removal of a claim under 28 U.S.C. § 1452(a) requires that the district court have jurisdiction over that claim under 28 U.S.C. § 1334. Where, as here, the claims against certain

[18] Listing: "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of [the bankruptcy court's] docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties."

defendants do not arise under or in a case under Title 11, jurisdiction depends on whether those claims are "related to" a case under Title 11. Plaintiffs' claims against the Non-Debtor Defendants are not.

### *1. "Related to" jurisdiction requires that a proceeding's outcome could conceivably affect an existing bankruptcy estate, not merely that the proceeding shares facts with claims against a debtor.*

A civil proceeding is "related to" a bankruptcy case if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)); *Feld v. Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995). This test is conjunctive: the anticipated outcome of the proceeding must both alter the debtor's rights, obligations, or choices of action, and have an effect on the administration of an actual, existing bankruptcy estate. *Bass v. Denney*, 171 F.3d 1016, 1022-23 (5th Cir. 1999) (" 'Related to' is a term of art in bankruptcy jurisdiction, where its meaning is not as broad as it is in ordinary parlance where it means 'having some connection with. The distinction is that, for purposes of bankruptcy jurisdiction, there is a cause component in 'related to.' The proceeding must be capable of affecting the bankruptcy estate for it to be 'related to' the bankruptcy."). A dispute becomes progressively more remote from § 1334 jurisdiction, and the federal interest in furnishing the rule of decision becomes progressively weaker, the more attenuated its connection to the estate. *Feld*, 62 F.3d at 752. "[T]he bankruptcy court has no jurisdiction over a matter that does not affect the debtor." *Id.*

The Fifth Circuit noted in *Zale* that "it is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction." 62 F.3d at 755 (*quoting Elscint, Inc. v. First Wis. Fin. Corp. (In Re Xonics)*, 813 F.2d 127, 131 (7th Cir. 1987)).

### *2. Plaintiffs' claims against the Non-Debtor Defendants arise from Chopra and Zoo's own independent conduct and seek recovery from their own assets.*

Plaintiffs' claims against Chopra and Zoo arise from their own conduct and misrepresentations in connection with the sale of TPG. Any recovery on those claims would come from Chopra and Zoo's own assets, not from the bankruptcy estates of AD Dallas or TPG.

The claim against Zoo for breach of contract seeks to enforce Zoo's obligations under the Agreement. *See* Plaintiffs' Second Amended Pet. ¶¶ 32-35, Appx. at 178. Holding Zoo liable for its own obligations under the Agreement does not affect either bankruptcy estate.

The claim against Zoo for liability on the dishonored checks under TEX. BUS. COM. CODE § 3.414(b) does not affect either bankruptcy estate. *See* Plaintiffs' Second Amended Pet. ¶¶ 36-37, Appx. at 178.

The claims against Chopra and Zoo for common law fraud and fraud in a stock transaction (brought under TEX. BUS. & COM. CODE § 27.01) are based on their own misrepresentations and nondisclosures. *See* Plaintiffs' Second Amended Pet. ¶¶ 38-45, Appx. at 178-79. Holding Chopra and Zoo liable for their own fraud does not affect either bankruptcy estate.

The claims against Chopra predicated on alter ego and veil piecing theories under TEX. BUS. ORGS. CODE §§ 21.223(b) & 101.002, seek to hold him "personally liable for the contractual and other obligations of Zoo Capital, AD Dallas, and TPG." *See* Plaintiffs' Second Amended Pet. ¶¶ 52-58, Appx. at 180-82. Plaintiffs allege: "Chopra is personally liable for the contractual and other obligations of Zoo Capital, AD Dallas, and TPG because he caused those entities to be used for the purpose of perpetrating, and did perpetrate, an actual fraud on Plaintiffs primarily for his own direct personal benefit." *Id.* ¶ 53, Appx. at 180. These claims are an

extension of the actual fraud claims against him because § 21.223(b) provides: "(b) Subsection (a)(2)[19] does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an *actual fraud* on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate." (Emphasis added.) Thus, under Texas law, an alter ego or veil-piercing claim rests on the defendant's own conduct and abuse of the corporate form, not on strict vicarious liability. The plaintiff must prove that the specific defendant personally engaged in wrongdoing by causing the corporation to be used to perpetrate an actual fraud for that defendant's own direct personal benefit.[20] Holding Chopra individually liable for his own personal, dishonest conduct—i.e., his own fraud—does not affect either bankruptcy estate.

Under Texas law, alter-ego claims based on generalized harm sustained by the Debtor which reach a principal for the obligations of the corporation itself belongs to the corporate debtor and is property of its estate. *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.*, 817 F.2d 1142, 1152-53 (5th Cir. 1987). But that rule reaches only generalized claims that any creditor could assert and that would benefit the creditor body as a whole; it does not reach claims that are

---

[19] "(a) A holder of shares, an owner of any beneficial interest in shares, or … any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to: … (2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory." TEX. BUS. ORGS. CODE § 21.223(a)(2).

[20] "Alter ego, or piercing the corporate veil, is not an independent cause of action, but is instead a means of imposing liability for an underlying cause of action." *Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.—Houston [14th Dist.] 2014, no pet.). *Accord Skaggs v. 4907 Corp.*, No. 02-24-00382-CV, 2025 Tex. App. LEXIS 3862, at *6 (Tex. App.—Fort Worth June 5, 2025, no pet.) (alter ego is a theory "under which a party may be held responsible for the wrongful conduct of another party").

personal to a particular plaintiff, arise from conduct directed at that plaintiff, and seek to recover for harm sustained by that plaintiff, not the Debtor. *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 359-60 (5th Cir. 1999) (distinguishing "[a]ctions by individual creditors that affect only that creditor personally" from the holding in *S.I. Acquisitions* and holding that "the creditor is the proper party to advance" such claims). Here, Plaintiffs do not allege the Debtor Defendants suffered harm, but rather that the Plaintiffs themselves suffered harm perpetrated on them by the Non-Debtor Defendants. Nor do Plaintiffs seek to augment, recover, or control estate assets of the Debtor Defendants. Under these circumstances, Plaintiffs have standing to proceed on their claims. *See Han v. Coutts (In re Coutts)*, Nos. 21-40528, 21-04092, 2022 Bankr. LEXIS 2284, at *22, 2022 WL 3367711 (Bankr. E.D. Tex. 2022).

The exemplary damages claim against Chopra is similarly based on his personal fraud. *See* Plaintiffs' Second Amended Pet. ¶¶ 62, Appx. at 183 ("Plaintiffs' injuries and damages resulted from Chopra's fraud and malice, committed while he was the principal and controlling person of Zoo Capital and AD Dallas. Plaintiffs are entitled to exemplary damages under TEX. CIV. PRAC. & REM. CODE § 41.003(a) and TEX. BUS. & COM. CODE § 27.01(c) and (d)."). Holding Chopra individually liable for exemplary damages based on his own personal fraudulent conduct does not affect either bankruptcy estate.

Because the Non-Debtor Defendants' liability does not depend on, and would not draw from, either bankruptcy estate, the second prong of the "related to" jurisdictional test is not satisfied as to them, whatever may be true of the claims against the Debtor Defendants themselves.

***3. Severing the claims against the Non-Debtor Defendants allows those claims to proceed to judgment in state court without affecting the administration of either bankruptcy estate.***

Severance is the mechanism by which courts routinely separate claims against non-debtor parties from claims against a debtor when only the latter implicate the bankruptcy court's jurisdiction. Rule 21 allows the court to sever any claim against a party. FED. R. CIV. P. 21. Once severed, the claims proceed as separate, discrete actions.

Here, a judgment against Chopra and Zoo in state court would not determine, offset, or otherwise interfere with any claim against, or asset of, either bankruptcy estate. Severance and remand accordingly present no risk of inconsistent results as between the state court proceeding and the Chapter 11 Cases.

## VI. CONCLUSION AND PRAYER

For the foregoing reasons, TED requests that the Court (a) remand this case in its entirety to the 162nd Judicial District Court of Dallas County, Texas, or, in the alternative, (b) sever the claims against the Non-Debtor Defendants, Chopra and Zoo, and remand those claims to the state court.

Dated: November 16, 2026.

Respectfully submitted,

*/s/ James A. McCorquodale*
James A. McCorquodale
Attorney-in-Charge
Texas State Bar No. 13464900
LAW OFFICE OF SANDY
MCCORQUODALE, P.C.
12700 Hillcrest Road, Suite 125
Dallas TX 75230
Direct Tel. 214-712-4472
Direct Fax 815-572-9448
Email: Sandy@SMQLAW.com
*Attorney for TED Ventures, LLC*

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on November 15, 2026, counsel for Plaintiff TED Ventures, LLC, conferred via email with Dinesh Singhal and Keith Remels, counsel for the Defendants, regarding the relief requested in this Amended Motion to Remand. Defendants oppose remand for the reasons set forth in their Opposition [ECF 19 & 19-1], among other reasons, to the original Motion to Remand [ECF 8].

*/s/ James A. McCorquodale*
James A. McCorquodale